Gary **LA BARBERA, Lawrence Kudla, Thomas Gesualdi, Louis Bisignano, Frank Finkel, Joseph Ferrara, Frank Dimenna, and Robert Carlino, as Trustees and Fiduciaries of the Local 282 Pension Trust Fund, Plaintiffs,**

v.

**WHITNEY TRUCKING, INC., Defendant.**

**No. 06 Civ. 3818(JSR).**

United States District Court, S.D. New York.

Aug. 31, 2007.

Erinn Weeks Waldner, Friedman & Wolf, New York, NY, for Plaintiffs.

## MEMORANDUM ORDER

RAKOFF, District Judge.

By motion dated July 18, 2007 defendant Whitney Trucking, Inc. ("Whitney") moved pursuant to Fed.R.Civ.P. 55(c) and 60(b) to vacate a default judgment entered against it on August 1, 2006. That motion is hereby denied.

The plaintiffs in this action are the Trustees and Fiduciaries of the Local 282 Pension Trust Fund (the "Fund"), a joint labor-management trust fund and multiemployer employee benefit plan, with offices in Lake Success, New York. Complaint ¶ 3. Defendant Whitney is a New York Corporation. *Id.* ¶ 4. On May 17, 2006, plaintiffs filed the Complaint in this action alleging that Whitney had ceased contributions to the Fund in May 2004 and had thus become obligated to pay "withdrawal liability" to the Fund for Whitney's proportionate share of the Fund's unfunded vested benefits. *Id.* ¶¶ 7–8.

On June 1, 2006, plaintiffs, pursuant to this Court's order, sent a Notice of Court Conference, scheduling the initial conference in this case for July 11, 2006, to Whitney's address at 636 Saw Mill River Parkway in Yonkers, New York, which is one of the addresses on file for Whitney with the New York State Secretary of State. *See* Declaration of Erinn Weeks Waldner dated August 1, 2007 ("Waldner Decl."), Ex. B and Ex. F. On June 15, 2006, plaintiffs served the Summons and Complaint on Whitney through personal service on the New York State Secretary of State. *See* docket sheet, 06 Civ. 3818, document 3.

On July 11, 2006, the Court held the initial conference in this matter and Whitney did not appear. *See* transcript, 7/11/2006.[1] Further, Whitney had not filed any answer or motion as required within 20 days of service of the Complaint. *See* Rule 12, Fed.R.Civ.P. Accordingly, plaintiffs requested permission to move for a default judgment, and the Court instructed plaintiffs to make such motion returnable on August 1, 2006. *Id.*

On July 24, 2006 (i.e., a week before the return date), plaintiffs duly served the Notice

of Default Motion and accompanying motion papers on Whitney's address at 636 Saw Mill River Parkway, *see* docket sheet, 06 Civ. 3818, document 4, part 3 (Certificate of Service dated July 24, 2006), and on July 26, 2006, plaintiffs also sent the same papers to two additional addresses for Whitney, *id.* part 5 (Certificate of Service dated July 26, 2006).[2]

On August 1, 2006, the Court held a further conference in this matter. In accordance with Court's ordinary practice, the Court waited a half-hour from the return time of 2:30 p.m. to see if Whitney would appear. *See* transcript, 8/1/2006, at 2.[3] Whitney did not appear, and the Court accordingly signed a default judgment against Whitney.

On August 2, 2006, plaintiffs sent the judgment and a demand for payment to the three addresses noted above. Waldner Decl. Ex. L. On August 17, 2006, plaintiff sought to depose Whitney's president and sole shareholder, Thomas Attonito, regarding Whitney's assets, and served the three addresses noted above as well as an additional office address for Juda Construction, Ltd, which plaintiffs believe to be a successor to Whitney, *see* Pl. Opp'n Mem. at 3, and Attonito's home address. *Id.* Exs. M & N. Attonito did not appear for the deposition. Pl. Opp'n Mem. at 4.

On November 1, 2006, plaintiffs sent a Second Notice of Deposition to a process server and requested that he locate a home address for Attonito and serve him personally. *Id.* Plaintiffs sent the Second Notice to Attonito's home address on December 12, 2006, and the process server served him personally on January 8, 2007. Waldner Decl. Exs. O & P.

---

**1.** As a result of a docketing error, this in-court conference did not previously appear on the docket sheet, but the taped record of the conference has now been transcribed and docketed.

**2.** In a letter to the Court dated August 29, 2007, Whitney argues that plaintiffs made a misrepresentation "in open Court" by stating that Whitney had been served on July 24, 2006, where "[t]his date does not comport with the Certificate of Service dated July 26, 2006 …, which states the default motion papers were *not served until July 26, 2006, two days after the date represented*

*to the Court."* (emphasis in Whitney letter). Not only is this argument totally immaterial to any issue bearing on the instant motion, but it is factually inaccurate. Plaintiffs not only filed the Certificate dated July 26, 2006, which Whitney references, but also filed a Certificate dated July 24, 2006, which Whitney's letter does not mention, showing that Whitney was properly served on that date.

**3.** The transcript of this conference has also now been docketed.

On December 21, 2006—more than seven months after the Complaint had been served—counsel for Whitney initially contacted plaintiffs and asked plaintiffs to consent to vacating the default judgment. *Id.* Ex. R. Plaintiffs refused. *Id.* Ex. S. On March 9, 2007, Whitney again requested that plaintiffs agree to vacate the default judgment, and plaintiffs again refused (by letter dated March 23, 2007). *Id.* Exs. V & W. On May 17, 2007, Whitney asked a third time that plaintiffs consent to vacate the default judgment and plaintiffs again refused. Pl. Opp'n Mem. at 5–6.

On June 18, 2007, plaintiffs filed the Complaint before this Court in the companion case of *La Barbera v. Juda Construction, Ltd.*, 07 Civ. 5763(JSR), which is an action to enforce the default judgment against Whitney's successors and alter egos. Pl. Opp'n Mem. at 6.

Finally, on July 11, 2007—almost 14 months since the filing of the Complaint in this case and almost a year since default judgment had been entered against defendant—defendant for the first time made contact with this Court. Specifically, counsel for the parties in the instant action jointly called Chambers and counsel for Whitney requested permission to move to vacate the default judgment. The Court granted permission, set a briefing schedule, and held oral argument on August 22, 2007.

■ Against this backdrop, Whitney's motion is premised principally on Rule 60(b)(1) of the Federal Rules of Civil Procedure, pursuant to which courts may "relieve a party or a party's legal representative from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Any motion made pursuant to Rule 60(b)(1) must be "made within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken." *Id.* Further, "[a]lthough the fact that a motion [i]s made barely within the one-year time limit gives the court the [p]ower to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was

'reasonable.' " *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir.1979). "What is reasonable will vary from case to case and depends on, among other things, whether the adverse party has been prejudiced and 'whether the moving party had some good reason for his failure to take appropriate action sooner.' " *Gouldbourne v. J.F. Jelenko & Co.*, 2000 WL 546762, at *1 (S.D.N.Y. 2000) (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2866, at 382–83 (1995)).

In the instant case, because Whitney has filed its instant motion to vacate the default judgment "barely within the one-year time limit," Whitney faces "a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.' " *Amoco Overseas Oil Co.*, 605 F.2d at 656. Whitney offers two principal arguments for why its long delay was reasonable, but these arguments are largely frivolous:

■ *First,* although Whitney does not dispute that plaintiffs complied with Fed. R.Civ.P. 4(h) and N.Y. Bus. Corp. L. § 306(b) by serving the New York State Secretary of State, Whitney argues that plaintiffs did not comply N.Y. C.P.L.R. § 3215, which provides that in cases where "a default judgment based upon non-appearance is sought against a domestic . . . corporation, . . . an affidavit shall be submitted that an *additional* service of the summons by first class mail has been made upon the defendant corporation at its last known address at least twenty days before the entry of judgment." N.Y. C.P.L.R. § 3215(g)(4)(i) (emphasis added).

Plaintiffs do not dispute that they did not make the "additional service" specified by § 3215, but argue that this section is not applicable to the filing and service of default motions in federal court. Pl. Opp'n Mem. at 7–8. Plaintiffs are correct. A plaintiff seeking a default judgment in federal court need not comply with § 3215 where that plaintiff has served the defendant in accordance with Fed.R.Civ.P. 4. *See I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 986 F.Supp. 816, 821 (S.D.N.Y.1997). This is because the

"the requirements of § 3215 serve a protective, as opposed to a jurisdictional, purpose." *Id.* In federal court, that protective function is served, in part, by each judge's individual rules and practices. *See id.* Because plaintiffs in this case fully satisfied the requirements of the applicable federal rules and of this Court's Individual Rules and practices, plaintiffs' non-compliance with the § 3215 has no bearing whatsoever on either the validity of the default judgment, or, more importantly, on the reasonableness of Whitney's failure to move to vacate the default judgment until over 11 months after the Court entered it.[4]

■ *Second,* Whitney argues that its delay in seeking to vacate the default judgment was reasonable because Whitney did not learn about the default judgment until December 2006, and, Whitney claims, Whitney has been engaged in "settlement discussions" with plaintiffs for the seven months between that time and July 2007, when Whitney sought the Court's permission to file the instant motion. *See* Whitney Mem. at 12; Waldner Decl. Ex. R (email from Whitney's counsel to plaintiffs dated 12/21/06); Declaration of Thomas Attonito dated July 18, 2007, ¶ 8 ("Whitney has not filed the instant application to vacate the default until now since I was in negotiations with the Funds in an attempt to settle this matter.").[5] However, these allegations, even if true, make Whit-

ney's delay in moving to vacate the default judgment less reasonable, not more so, as they show a conscious decision to delay. *See Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 336 (2d Cir.1986) (holding that district court did not abuse its discretion in determining that motion to set aside default made at least seven months after defendant learned of entry of default was not made within a reasonable time).

■ In sum, Whitney has offered nothing that remotely approaches a "good reason" for its "failure to take appropriate action sooner." *Gouldbourne,* 2000 WL 546762, at *1. Accordingly, Whitney's motion to vacate the default judgment is hereby denied.[6] The Clerk of the Court is directed to close document 10.

SO ORDERED.

---

4. Whitney argues that plaintiffs violated this Court's Individual Rules by failing to obtain permission to file the motion for default judgment by way of a telephone conference with Chambers with all parties on the line. *See* Whitney Reply Mem. at 1–3. However, as the Court noted at oral argument on this motion, *see* transcript, 8/22/07, plaintiffs filed the motion for default judgment in accordance with the Court's instructions at an in-court conference on 7/11/06, at which Whitney failed to appear, *see* transcript, 7/11/06. Further, the fact that plaintiffs may have served Whitney with the default papers a few days later than they stated they would, *see* Whitney letter dated 8/29/07, has no bearing on the outcome of this motion.

5. Plaintiffs dispute that any meaningful settlement discussions occurred during this time. *See* Pl. Opp'n Mem. at 5.

6. Even if Whitney had moved in a reasonable time, Whitney's motion would still be denied

based on the three factors set forth in *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 507 (2d Cir.1991). First, "[a] default should not be set aside when it is found to be willful," *Action S.A.,* 951 F.2d at 507, and here, where Whitney was properly served, Whitney has offered no good reason for finding its default was anything other than willful. Second, plaintiffs will be prejudiced if the Court vacates the default because a further delay will provide Whitney's successors with a further opportunity to distance their assets from plaintiffs and hinder plaintiffs' efforts to collect documents. Pl. Opp'n Mem. at 23–24; *see, e.g., Amoco Overseas Oil Co.,* 605 F.2d at 656 (finding that appellant's long delay "has seriously weakened appellees' case by making it less likely that they will be able to recover documents and records"). Third, Whitney appears to lack a meritorious defense because Whitney failed to demand arbitration as required by 29 U.S.C. § 1401(a), and does not qualify for an exemption from withdrawal liability under 29 U.S.C. § 1398.